**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RENIL ESCOBARRIVERA (#573215)** **CIVIL ACTION NO.**

**VERSUS** **19-498-BAJ-EWD**

**DARRELL VANNOY, ET AL.**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 24, 2021.

Erin Wilder-Doomes

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**RENIL ESCOBARRIVERA (#573215)** **CIVIL ACTION NO.**

**VERSUS** **19-498-BAJ-EWD**

**DARRELL VANNOY, ET AL.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court are the following: a Motion to Dismiss Pursuant to FRCP Rule 4(m),[1] filed by Antonio Whitaker ("Whitaker"); a Motion to Compel Discovery[2] and a Motion for Summary Judgment,[3] filed by Renil Escobarrivera ("Plaintiff"); and a Motion for Summary Judgment,[4] filed by Tim Delaney ("Delaney"), Joseph LaMartinaire ("LaMartinaire"), and Darrell Vannoy ("Vannoy"). For the following reasons, the undersigned recommends that the Motion for Summary Judgment,[5] filed by Delaney, LaMartinaire, and Vannoy, be granted; that the claims against Whitaker be dismissed pursuant to 28 U.S.C. §§ 1915(e) and 1915A,[6] as well as any equal protection claims; and that Plaintiff's Motion to Compel[7] and Motion for Summary Judgment[8] be denied, resulting in this case being dismissed with prejudice in its entirety.

## I. Background

Plaintiff, who is confined at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against Vannoy, LaMartinaire, Delaney, James LeBlanc and Whitaker (collectively, "Defendants").[9] Plaintiff's only remaining claims include

---

[1] R. Doc. 40.
[2] R. Doc. 47.
[3] R. Doc. 51.
[4] R. Doc. 52.
[5] R. Doc. 52.
[6] Whitaker's Motion to Dismiss should be denied as moot.
[7] R. Doc. 47.
[8] R. Doc. 51.
[9] R. Doc. 1.

that his confinement in CCR[10] violates his due process rights because, at the time of filing, he had been confined there for nearly two years with no meaningful review of his confinement[11] and that Whittaker retaliated against Plaintiff.[12] Plaintiff seeks monetary relief against Defendants in their individual capacities and injunctive relief against Defendants in their official capacities.[13]

## II. Law & Analysis

### A. The Motion for Summary Judgment filed by Delaney, LaMartinaire, and Vannoy Should be Granted and Plaintiff's Motion for Summary Judgment Should be Denied

#### i. Standard of Review

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact such that the moving party is entitled to judgment as a matter of law.[14] A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[15] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[16] Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element

[10] CCR is used by inmates at LSP to refer to "Closed Cell Restrictions," which is essentially solitary confinement. Based on Plaintiff's more recently filed Motions and Memoranda, it appears he sought to bring an equal protection claim as well, but to the extent he attempted to plead an equal protection claim, he failed to do so, and any equal protection claim should be dismissed pursuant to 28 U.S.C. §§ 1915(e) and 1915A, as discussed below.
[11] R. Doc. 1, pp. 4-5.
[12] Plaintiff's other claims, including all claims against James LeBlanc, as well as his claims for due process with respect to the initial disciplinary proceedings, for cruel and unusual punishment, and claims based on the supervisory roles of Darrell Vannoy, Joseph LaMartinaire, and Tim Delaney, have been dismissed. R. Docs. 35 & 39.
[13] R. Doc. 1, pp. 1 & 7.
[14] Fed. R. Civ. P. 56. *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[15] *Celotex Corp.*, 477 U.S. at 323.
[16] *Anderson*, 477 U.S. at 248.

essential to that party's case and on which that party will bear the burden of proof at trial.[17] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[18]

### ii. Plaintiff's Confinement in CCR Does Not Violate Clearly Established Rights

Defendants have asserted the defense of qualified immunity with respect to Plaintiff's claims.[19] The qualified immunity defense is often asserted by prison officials in § 1983 cases. Employing a two-step process, the defense operates to protect public officials who are performing discretionary tasks.[20] Viewing the facts in the light most favorable to the plaintiff, courts evaluating the defense consider whether the defendant's conduct violated the plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time the violation occurred. Courts have discretion to decide which of the two prongs of the analysis to address first.[21] The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation he confronted. The assertion of the qualified immunity defense alters the summary judgment burden of proof.[22] Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist

[17] *Celotex Corp*., 477 U.S. at 323.
[18] *International Shortstop, Inc. v. Rally's, Inc*., 939 F.2d 1257, 1263 (5th Cir. 1991).
[19] R. Doc. 16-1, p. 5.
[20] *Huff v. Crites*, 473 Fed. App'x. 398 (5th Cir. 2012).
[21] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement").
[22] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

regarding the reasonableness of the official's conduct."[23] "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct."[24]

Plaintiff maintains that his continued confinement in CCR violates his right to procedural due process. The Due Process clause of the Fourteenth Amendment prohibits state officials from depriving "life, liberty, or property without due process of law."[25] Analysis of procedural due process also involves two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State…the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient…."[26] Here, because the deprivation is not for life or property, Plaintiff's claims hinge on whether he has been deprived of a liberty interest without adequate procedural protections.[27]

In a cases regarding heightened confinement, an inmate's constitutionally protected liberty interest is "generally limited to freedom from restraint which…imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life;" only then does a liberty

---

[23] *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), (citing *Michalik v. Hermann*, 422 F.3d at 262).

[24] *Michalik*, 422 F.3d at 262.

[25] U.S. Const., Amend. XIV.

[26] *Kentucky Dept. of Corrections v. Thompson*, 409 U.S. 454, 460 (1989).

[27] In various memoranda filed in this case, Plaintiff has attempted to point to activities that are not available to him while in CCR. *See, e.g.*, R. Doc. 16, p. 2. To the extent this information is intended to assert a First Amendment claim regarding the lack of church services available in CCR, Plaintiff has never brought this claim in any Complaint. Plaintiff will not be permitted now to expand the scope of his claims, via argument in a memorandum opposition to a motion to dismiss previously filed. *See Kostmayer Construction, LLC, v. Port Pipe & Tube, Inc.*, No. 16-1012, 2016 WL 6143075 at *3 (W.D. La. Oct. 19, 2016) (citing *Sartin v. EFK Diagnostics*, No. 16-1816, 2016 WL 3598297 at *4 (E.D. La. July 5, 2016)) ("an opposition to a motion to dismiss is not the place for a party to raise new factual allegations or assert new claims."). Thus, claims regarding the availability, or lack thereof, of religious services in CCR is not further discussed. Further, to the extent these allegations should be construed as a motion to amend pursuant to Federal Rule of Civil Procedure 15(a) (*Riley v. School Bd. Union Parish*, 379 Fed.Appx. 335, 341 (5th Cir. 2010), a motion to amend would be futile as to a First Amendment claim because it is unexhausted as it was not raised by Plaintiff in any prior administrative grievances. R. Docs. 1, p. 3 & 29-1. Further, Plaintiff has already had one opportunity to amend his complaint. R. Doc. 26. *See Magee v. BPX Properties (N.A.), L.P.*, No. 15-2097, 2019 WL 5957246, at *2 (W.D. La. Nov. 12, 2019), *aff'd*, 830 Fed.Appx. 740 (5th Cir. 2020) (distinguishing *Riley*, noting that an amendment had already been made and refusing to construe arguments made for the first time in opposition to summary judgment as a motion to amend the complaint).

interest arise to trigger the protections of the due process clause.[28] "[T]he Due Process clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner."[29] Only when a prisoner demonstrates "extraordinary circumstances" may he maintain a due process challenge to a change in his custodial classification.[30]

In determining whether Plaintiff's confinement poses an atypical and significant hardship evaluated in the context of prison life, such that a liberty interest has arisen, the relevant dispositive inquiry employs "a sliding scale, taking into account how bad the conditions are *and* how long they last."[31] Regarding the conditions to which Plaintiff is subjected in CCR, the evidence introduced by Defendants indicates as follows: CCR is comprised of cells that have barred doors and are located on open tiers, and inmates are able to speak to other inmates on the tier;[32] inmates in CCR also receive two hours per day on the open tier unrestrained;[33] unless otherwise restricted, CCR inmates also receive an hour of yard time three days per week.[34]

Based on "facts" presented by Plaintiff in various memoranda and other documents,[35] because of confinement in CCR, he has been deprived of, and/or restricted to, the following, which

[28] *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).
[29] *Id.* at 478.
[30] *Id.* at 484.
[31] *Bailey v. Fisher*, 647 Fed.Appx 472, 476 (5th Cir. 2016).
[32] R. Doc. 52-4, p. 2.
[33] Plaintiff specifically disputes this and alleges he only has one hour on the tier per day. R. Doc. 55, p. 2.
[34] R. Doc. 52-4, p. 2.
[35] Because Plaintiff is representing himself, the undersigned has attempted to draw out any relevant "facts," and has also considered information that may not constitute competent summary judgment evidence. Plaintiff submitted multiple memoranda and other documents that were signed with declarations such as "I Renil Escobarrivera do declare under penalty of perjury these facts to be taken as true," and "I declare under the penalty of perjury these facts to be true in this petition to the best of my knowledge and understanding." *See, e.g.*, R. Docs. 37, p. 7; 51, p. 6; 55, p. 14; 57, p. 59. The verification language is not substantially similar to the statutory language which requires a statement "in substantially the following form": "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746(2). Rather, the first statement seems to request that the Court accept the facts as true, but does not swear that they are. *See Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306-07 (5th Cir. 1988). The second statement also provides Plaintiff with an avenue to avoid the consequences of declaring a statement under the penalty of perjury as it is only "to the best of [his] knowledge and understanding." The Court also questions the competency of these documents as competent summary judgment evidence because the documents are not in Plaintiff's handwriting, and 28 U.S.C. § 1746(2) appears to require the declarations be "in writing of the person making the same." *Higgins v. Morris*, 673 Fed.Appx. 376, 378 (5th Cir.

varies from inmates in general population:[36] religious assembly;[37] only one hour per day out of his cell;[38] three hours of outdoor exercise per week versus "unlimited" access to exercise in general population;[39] and educational opportunities.[40]

The Court does not have to reach the question of whether Plaintiff has a liberty interest in this case. Even if such an interest has arisen, Defendants are entitled to qualified immunity because the law regarding the existence of that liberty interest is not clearly established based on the specific facts related to Plaintiff's confinement. The law regarding due process with respect to segregated confinement is murky, and Plaintiff's confinement in CCR (just over three years) is past the length of time that has been held to be clearly constitutional in the Fifth Circuit but has not been long enough such that a due process violation is likely implicated.[41] Specifically, "the Fifth Circuit has concluded that restrictive placements of less than two-and-a-half years do not implicate due process and that placements of more than five years likely do."[42] Further, as discussed below, the law on this topic does not "clearly establish" that a liberty interest has arisen

---

2016). Nevertheless, even considering this "evidence," Defendants are still entitled to qualified immunity. Plaintiff also filed a "Statement of Disputed Facts" with his opposition to the Motion for Summary Judgment that has been taken into account, but much of what Plaintiff has included in his statement of disputed facts includes statements that are inconsequential to the remaining claim before the Court and instead focus on the original disciplinary conviction, for which the due process claims were previously dismissed. R. Docs. 35, 39, & 55, pp. 3-4.

[36] In addition to the "liberties" Plaintiff lists that he is unable to enjoy, he notes that upon placement in CCR, he "lost his income from the hobby craft sales," his tools, prison incentive wages, and job. R. Doc. 16, p. 3. To the extent Plaintiff seeks to bring a claim for his lost property, it is not cognizable per the *Parratt/Hudson* doctrine. *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Parratt v. Taylor,* 451 U.S. 527, 542 (1981). Further, Plaintiff cannot state a claim for the loss of his job or incentive wages, as Plaintiff has no constitutional right to be compensated for work while incarcerated or to any particular job assignment. *Jones v. U.S. ex rel. Dept. of Justice*, 412 Fed.Appx. 690, 691 (5th Cir. 2011) (citing *Wendt v. Lynaugh*, 841 F.2d 619, 621 (5th Cir. 1988); *Cotton v. Hargett*, 68 F.3d 465 (5th Cir. 1995) (a prisoner has no constitutional right to a particular job assignment).

[37] R. Doc. 16, p. 2. *See* n. 27 for discussion re: any attempt to assert First Amendment claim.

[38] R. Doc. 16, p. 2.

[39] R. Doc. 16, pp. 2-3.

[40] R. Doc. 37, pp. 6-7.

[41] *See Bailey*, 647 Fed.Appx at 476-77 (citing *Wilkerson v. Goodwin*, 774 F.3d 845, 854-55 (5th Cir. 2014)) (noting "that two and a half years of segregation is a threshold of sorts for atypicality,…such that 18-19 months of segregation under even the most isolated conditions may not implicate a liberty interest.").

[42] *Hernandez v. Abbott*, No. 17-23, 2020 WL 5539093, at *12 (E.D. Tex. Aug. 24, 2020), *report and recommendation adopted*, No. 17-23, 2020 WL 5534522 (E.D. Tex. Sept. 15, 2020) (citing *Wilkerson*, 744 F.3d at 855; *Bailey*, 647 Fed. Appx. at 476-77).

so as to invoke the protections of the Due Process clause in a case of just over three years of segregated confinement in the conditions which Plaintiff has been subjected.

Though Plaintiff argues that the Fifth Circuit "has already found CCR to be atypical compared to general population" [43] and that Defendants were "on notice" due to *Wilkerson*, these statements are an oversimplification. First, the extreme duration of the confinement in CCR presented in *Wilkerson* was clearly a moving factor, as the Fifth Circuit explicitly recognized "*[c]oupled with* this extraordinary duration, the conditions in CCR are sufficiently restrictive so as to constitute an 'atypical and significant hardship….'"[44] The Fifth Circuit further recognized "[w]ere the *duration* of Woodfox's solitary confinement less lengthy, such distinctions [between the conditions presented in *Wilkerson* and *Wilkinson v. Austin*[45]] might become material."[46] The plaintiff in *Wilkerson* had been confined in CCR over ten times longer than Plaintiff here.[47] Thus, under the current facts, *Wilkerson* is not dispositive, and the Court must take into account all conditions present coupled with the duration Plaintiff has been in CCR. Similarly, though Plaintiff cites *Fussell v. Vannoy*,[48] for the proposition that Defendants were "on notice" that CCR poses an atypical and significant hardship,[49] this again is an oversimplification. *Fussell*, like *Wilkerson*, involved an inmate who was held in segregated confinement for an extraordinary duration of approximately 27 years,[50] again, nearly ten longer than Plaintiff. The duration of confinement is a critical factor in the sliding scale, and *Fussell* is also not dispositive of whether a clearly

---

[43] R. Doc. 51, p. 2.
[44] *Wilkerson*, 774 F.3d at 855.
[45] 545 U.S. 209 (2005).
[46] *Id.* at 855-56.
[47] *Id.* ("Woodfox's incarceration in solitary confinement is now approaching an extraordinary thirty-nine years. This is almost five times the duration deemed sufficient to give rise to a liberty interest.").
[48] No. 13-571, 2016 WL 3538376 (M.D. La. June 22, 2016).
[49] R. Doc. 55, p. 4.
[50] *Fussell v. Vannoy*, No. 13-571, 2016 WL 3538376 (M.D. La. June 22, 2016). The Plaintiff in *Fussell* was placed in extended lockdown on or about April 28, 1989 and remained there to the date the Ruling cited was issued on June 22, 2016. *Id.* at *1.

established liberty interest exists in Plaintiff's specific case so as to give rise to due process protections, especially considering that the Plaintiff in *Fussell* had not brought a claim for violations of due process due to extended lockdown. Instead, *Fussell* focused on Eighth Amendment claims such that the comments regarding due process were dicta.

The seminal case of *Wilkinson v. Austin*[51] provides an illustration for when a liberty interest may arise. In *Wilkinson,*[52] the Supreme Court reaffirmed and expounded upon *Sandin*, finding that a liberty interest had arisen as a result of the conditions in which inmates at an Ohio Supermax facility were held including the following: "inmates spent 23 hours a day in single cells, with solid metal doors that prevented communication from one cell to another; prisoners took their meals alone in their cells; and visitation opportunities were 'rare,' and conducted through glass walls."[53] The conditions prohibited nearly all human contact, to the point where even conversation was not permitted from cell to cell, the lights stayed on for 24 hours, exercise was permitted for one hour per day, but only in a small indoor room. The Supreme Court further took into consideration that placement at the Ohio Supermax facility was indefinite, and after an initial 30-day review, reviewed only annually.[54] Another important factor considered was that confinement at the Ohio Supermax facility disqualified otherwise eligible inmates for parole consideration.[55] These conditions are vastly different than those presented here.

In the instant case, the undisputed facts demonstrate that the cells are open and allow for communication between inmates like all cells at all other cellblocks at the Louisiana State Penitentiary.[56] Further, contrary to the conditions in *Wilkinson*, the seven hours of out-of-cell time

---

[51] 545 U.S. 209 (2005).
[52] *Id.* at 221.
[53] *Wilkerson*, 774 F.3d at 854 (quoting *Wilkinson*, 545 U.S. at 224).
[54] *Wilkinson*, 545 U.S. at 224; R. Doc. 52-4, p. 2.
[55] *Id.*
[56] R. Doc. 52-4, p. 2. *Wilkinson*, 545 U.S. at 224.

per week inmates in CCR receive is to roam the entire tier rather than being confined to another small room.[57] In *Wilkinson*, the Supreme Court made clear that while any of the conditions present "standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context."[58] The conditions presented in this case are far less extraordinary than those presented in *Wilkinson*. Based on the evidence produced, not one condition of confinement in CCR is as harsh as any condition at issue in *Wilkinson*.

Rather, the conditions here are more akin to those presented in *Queen v. Adams*.[59] In *Queen*, the plaintiff, though in segregated confinement, had contact with "a variety of people," and was able to talk to inmates in nearby cells.[60] Similarly in *Tate v. Starks*,[61] the court took into consideration that the plaintiff was not as isolated from other people as the inmates in *Wilkinson*. The court in *Tate* highlighted the importance of looking at the varying degrees of isolation between cases,[62] and in both *Queen* and *Tate* the courts found that a liberty interest had not arisen so as to require the protections afforded by the Due Process clause. Here, because the cells are barred and not sealed by steel doors, Plaintiff is allowed to communicate with whomever is on the tier, giving him contact with "a variety of people."[63] Further, generally, CCR inmates are allowed two contact visits per month.[64] Similarly, a clearly established liberty interest has not arisen merely due to the

---

[57] *Id.* Defendants state inmates receive two hours per day out of their cells on the tier and one hour, three days per week of yard time (R. Doc. 52-4, p. 2), but, for sake of argument, the more restrictive out-of-cell time as stated by Plaintiff will be accepted, which includes one hour per day of out-of-cell time. *See* R. Docs. 16, p. 2; 59, p. 2, & 59-1, p. 4.
[58] *Wilkinson*, 545 U.S. at 224.
[59] No. 11-221, 2012 WL 1081227, at *3 (N. D. Tex. Feb. 27, 2012).
[60] *Id.* at *3.
[61] No. 08-73, 2013 WL 5914398 at *4-5 (N.D. Miss. Nov. 4, 2013).
[62] *Id.* at *4.
[63] *Queen v. Adams*, No. 11-221, 2012 WL 1081227, at *3 (N. D. Tex. Feb. 27, 2012).
[64] R. Doc. 55, p. 7. Though visitation has been curtailed due to the COVID-19 pandemic, it has been curtailed for all prisoners, not only CCR, and the lack of video visits since March 2020 (R. Doc. 59-1, p. 4) is not so extraordinary to give rise to a liberty interest.

lack of recreational or religious service opportunities[65] in CCR.[66] The law is not clearly established that Plaintiff's continued confinement in CCR has given rise to a liberty interest, so any right to due process that could have been infringed by Defendants was not clearly established either. Plaintiff has failed to "rebut the defense [of qualified immunity] by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."[67] Thus, Defendants are entitled to summary judgment on the basis of qualified immunity.[68] For the same reasons, Plaintiff is not entitled to summary judgment.

Plaintiff also argues that the sentencing guidelines for simple escape dictate the appropriate length of time for detention in segregated confinement, but the criminal sentencing guidelines have no effect on custodial classification within the prison.[69] The statutes cited by Plaintiff, Louisiana Revised Statutes §§ 14:27 and 14:110,[70] provide the parameters for sentencing a person when that

---

[65] Plaintiff points out that he does not have access to church services, emails, "Jpay," the law library, certain educational opportunities, and other privileges afforded to other inmates. R. Doc. 55, pp. 6-7.

[66] *See Bowden v. Director, TDCJ-CID*, No. , 2014 WL 1116952 at *2 (E.D. Tex. March 18, 2014) ("The conditions listed by Bowden, including lack of access to outdoor recreation, the law library, religious services, and certain items of personal property such as typewriters are not atypical and significant hardships in relation to the ordinary incidents of prison life."); *Ward v. Lee*, No. , 2011 WL 4381947 (W.D. La. Aug. 11, 2011) (wherein the court noted "when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy," and that restrictions following disciplinary convictions, "including the loss of chapel privileges" are not atypical."). *See also Fiorentino v. Biershbach*, 64 Fed.Appx. 550, 553 (7th Cir. 2003) ("such a temporary denial of access to communal religious programs is neither an atypical nor significant deprivation warranting due process protection."); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("Limitations on religious services, especially for a short period of time, have also been found not to present an atypical and significant hardship." The court further noted that the plaintiff was not prevented from exercising his religion within his cell and was thus, not subjected to an atypical and significant hardship).

[67] *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), (citing *Michalik v. Hermann*, 422 F.3d at 262).

[68] It should also be noted that Plaintiff has been found guilty of numerous disciplinary infractions during his time in segregated confinement, and this Court has previously found that prison officials are entitled to qualified immunity when an inmate in segregated confinement is found guilty of disciplinary infractions while in segregated confinement, and those disciplinary infractions provided some basis for the continued segregated confinement. *See Marsalis v. Cain*, No. 12-799, 2014 WL 51215 (M.D. La. Jan. 7, 2014) *report and recommendation adopted,* No. 12-799, 2014 WL 407457 (M.D. La. Jan. 31, 2014).

[69] *See, e.g.*, R. Doc. 55, pp. 4-5.

[70] R. Doc. 55, p. 4.

personal has been formally charged and convicted in court of law. These provisions are not dispositive of the length of time an inmate may be sentenced to segregated confinement (or the reasonable length of time such confinement can be extended for additional disciplinary infractions). Similarly, to the extent prison rules and regulations dictate the length of time an inmate may be sentenced to segregated confinement for attempted simple escape,[71] violation of those internal rules and regulations does not give rise to a claim of constitutional dimension.[72]

### B. Plaintiff's Equal Protection Claims and His Claims Against Whitaker Should be Dismissed *Sua Sponte* Pursuant to 28 U.S.C. §§ 1915(e) and 1915A and Whitaker's Motion to Dismiss Pursuant to FRCP 4(m) Should Be Denied as Moot

#### i. Standard of Review

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim against a governmental entity or an officer or employee of a governmental entity that is frivolous, malicious, or fails to state a claim upon which relief may be granted. The statutes impose similar standards for dismissal.[73] Both statutes are intended to afford the court the ability to separate those claims that may have merit from those that lack a basis in law or in fact.

A claim is factually frivolous if the facts alleged are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[74] A claim has no arguable basis in law if it is based upon a obviously meritless legal theory, "such as if the complaint

---

[71] Plaintiff discusses various rules and regulations regarding the length of time a prisoner should be held in segregated confinement for attempted simple escape and refers to the latest guidelines dictating length of segregated confinement as the "Matrix" program. *See, e.g.*, R. Doc. 37, p. 3.

[72] *Lewis v. Secretary of Public Safety and Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) ("The LaDPSC and CCA internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (internal citations omitted)). *See also Humphrey v. Banks*, 777 Fed.Appx. 767, 768 (5th Cir. 2019) (the plaintiff "has not shown that the district court erred by dismissing for failure to state a claim his claim that prison officials violated an internal policy by assigning him to a unit that housed gang-affiliated inmates. Violations of prison rules or regulations, without more, do not give rise to a cause of action.").

[73] Plaintiff was granted permission to proceed *in forma pauperis* on August 1, 2019 (R. Doc. 4) so both statutes apply.

[74] *Denton v. Hernandez*, 504 U.S. 25, 33-33 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

alleges the violation of a legal interest which clearly does not exist."[75] The law gives judges not only the authority to dismiss a claim that is based on an meritless legal theory, but also the unusual power to pierce the veil of the factual allegations.[76] Alleged facts that are merely improbable or strange, however, are not frivolous for purposes of § 1915.[77]

To determine whether the complaint fails to state a claim under § 1915(e)(2)(B)(ii), courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[78] Accordingly, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[79] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[80] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[81]

A § 1915 or § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[82]

**ii. Plaintiff Failed to State a Claim for Equal Protection**

If Plaintiff has attempted to state an equal protection claim related to his allegations that people are released from CCR based on favoritism, that claim also fails.[83] Because Plaintiff does not allege he is a member of a suspect class who has been treated differently because of

---

[75] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).
[76] *Denton,* 504 U.S. at 32.
[77] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[78] *Hart v. Harrison*, 343 F.3d 762, 763-64 (5th Cir. 2003).
[79] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).
[80] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[81] *Id.*
[82] *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).
[83] An equal protection claim was not discernable from Plaintiff's Complaint, as amended.

membership in that class, any equal protection claim would be a "class of one" claim.[84] To succeed with a "class of one" claim, a plaintiff must show that he or she was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment.[85] In the Complaint, Plaintiff compares himself, specifically, to another inmate, Jessie Grace, who was also allegedly held in CCR for disciplinary infractions[86] and, throughout pleadings and memoranda filed within this matter, complains, generally, that inmates who have committed worse disciplinary infractions than those committed by Plaintiff have been held in segregated confinement for less time than Plaintiff.

"Under the rational basis standard, applicable here, any rational ground for the conduct in question will suffice to defeat the class-of-one claim."[87] Further, an inmate cannot base an equal protection claim solely on a personal belief that he has been a victim of discrimination.[88] This presents a high hurdle for any class of one claim.[89] The obstacles for a class of one claim are further heightened when based upon matters that involve a significant amount of discretion and innumerable considerations. Prison disciplinary proceedings and decisions regarding housing of prisoners present this type of circumstance.

In a similar scenario, the Supreme Court concluded that government employees cannot bring "class of one" claims challenging adverse employment because such actions are

---

[84] *Engquist v. Oregon Dep't. of Agr.*, 553 U.S. 591, 594 (2008).
[85] *Id.* at 601.
[86] R. Doc. 1, pp. 5-6. In other various documents, Plaintiff provides other examples, such as an inmate, David Mathis, who allegedly was convicted of murdering a Captain at "Hunt CCR," which confinement is purportedly less restrictive (R. Doc. 16, p. 7) and David Brown and Jeffery Clark who were allegedly sentenced to death for the murder of the same Captain during an aggravated escape, and who, though confined in the same building as Plaintiff, allegedly have more freedoms than Plaintiff. R. Doc. 37, pp. 5-6. Plaintiff provides further examples in opposition to the Motion for Summary Judgment. *See* R. Doc. 66, pp. 8-9.
[87] *Unruh v. Moore*, 326 Fed.Appx. 770, 772 (5th Cir. 2009).
[88] *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).
[89] *Unruh*, 326 Fed.Appx. at 772 (citing *Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 387 (5th Cir. 2008) ("[T]o ultimately prevail on the claim, the [plaintiffs] must carry the heavy burden of 'negativ[ing] any reasonable conceivable state of facts that could provide a rational basis' for their differential treatment.").

discretionary, based on a vast array of subjective, individualized assessments.[90] Though not yet specifically addressed by the Fifth Circuit, the same considerations are present in prison disciplinary proceedings and continued segregation arising from such proceedings. Other courts have reached the conclusion that a "class of one" claim is unavailable in the context of prison disciplinary proceedings due to the discretionary nature of these proceedings.[91] Some courts have gone farther to find that "class of one claims" are not cognizable with respect to prisoner challenges of "discretionary decisions regarding security classifications and prisoner placement,"[92] and some have made sweeping statements of law that "class-of-one equal protection claims are not cognizable in such an individualized and discretionary setting as the prison setting."[93]

Due to the unique nature of every disciplinary proceeding and of continued segregation arising from such proceedings and based upon the foregoing law, a class of one equal protection claim is not cognizable with respect to claims regarding prison disciplinary proceedings and subsequent prisoner classification and placement due to the vast discretion involved in such decisions.[94] Accordingly, to the extent Plaintiff is attempting to assert a "class of one" equal protection claim regarding his continued confinement in CCR, that claim is subject to dismissal.

---

[90] *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 605 (2008).

[91] *Howard v. Koeller*, 756 Fed.Appx. 601, 604 (7th Cir. 2018) (affirming lower court holding that "class of one" equal protection claim based on prison disciplinary infraction failed because it challenged discretionary decision making).

[92] *Dawson v. Norwood*, No. 06-914, 2010 WL 2232355, at *2 (W.D. Mich. June 1, 2010).

[93] *Upthegrove v. Holm*, No. 09-206, 2009 WL 1296969, at *1 (W.D. Wisc. May 7, 2009). Courts within the Fifth Circuit have also found class-of-one claims are not cognizable in other instances dealing with the penal system. *See, e.g., Milton v. Smith*, No. 19-214, 2019 WL 1852688, at *5 (W.D. La. Apr. 10, 2019) (explaining that because participation in work release is specially reserved to the discretion of correctional officers, inmate's work release rejection was excepted from a "class of one" claim), *adopted by* 2019 WL 1848554 (W.D. La. Apr. 24, 2019).

[94] Other courts within this circuit have noted doubt regarding the viability of "class of one" claims in prison disciplinary proceedings. *See Reagan v. Burns*, No. 16-2590, 2019 WL 6733023 at *12, n. 18 (N.D. Tex. Oct. 30, 2019). This Court has also previously noted that it is unlikely a "class of one" claim may be brought under such circumstances. *See Carmouche v. Hooper*, No. 20-478, 2020 WL 8258548, at *5 (M.D. La. Dec. 21, 2020) *report and recommendation adopted by* 2021 WL 232594 (M.D. La. Jan 22, 2021).

**iii. Plaintiff Has Failed to State a Retaliation Claim Against Whitaker**

Claims of retaliation by prison inmates are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution.[95] To prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis,* was undertaken against the prisoner by the defendant, and (4) that there was causation, *i.e.,* that "but for" the retaliatory motive, the adverse action would not have occurred.[96]

Plaintiff's sole allegations against Whitaker regarding retaliation are as follows: Whitaker told Plaintiff he was going to place him in the "Thinking for a Change" class, which is "designed to release prisoners from lock down upon completion of the class."[97] Plaintiff also says that Whitaker told Plaintiff he would be released from CCR after completion of the class. Plaintiff completed the class but was not released from CCR, so he asked Whitaker why he had not been released. Whitaker told Plaintiff that Delaney had denied Plaintiff's release, and Plaintiff complained to Whitaker about the situation.[98] Plaintiff alleges that because he complained to Whitaker about being denied release by Delaney, Whitaker "had [Plaintiff] transferred from Hawk CCR at Camp D to Death Row CCR in retaliation for [Plaintiff's] complaint and ARP."[99]

---

[95] *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).
[96] *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).
[97] R. Doc. 1, p. 5.
[98] R. Doc. 1, p. 5.
[99] R. Doc. 1, p. 5.

The Fifth Circuit has not provided a bright line test for determining when a retaliatory action exceeds the *de minimis* threshold. Whereas transfer to a less desirable job assignment has not been found to be greater than *de minimis*, a transfer to a more dangerous unit or job assignment may be.[100] Plaintiff has not sufficiently alleged that this particular section of CCR is more dangerous or any more restrictive than the CCR section in which he was housed prior to the transfer, and, to the extent death row CCR is less desirable than general CCR, mere transfer to a less desirable dormitory is insufficient to state a claim of retaliation.[101] Accordingly, the transfer of Plaintiff to a different section CCR is a *de minimis* adverse act insufficient to support a claim of retaliation, such that Plaintiff's claim of retaliation fails as a matter of law.[102]

**C. The Motion to Compel, Filed by Plaintiff, Will Be Denied**

Plaintiff has filed a Motion to Compel Discovery an order requiring Defendants to further answer numerous discovery requests and to produce various documents.[103] Federal Rule of Civil Procedure 56(d) dictates that a court may defer its consideration of a summary judgment motion when the non-movant shows, by affidavit or declaration, that it cannot present facts essential to justify its opposition. The non-movant must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment

[100] *Morris*, 449 F.3d at 697.

[101] *See Jasmine v. Cain*, No. 12-743, 2014 WL 971989, at *4 (M.D. La. March 12, 2014) ("transferring the plaintiff from a trustee dormitory at LSP to a less favorable dormitory" is *de minimis* and insufficient to support a claim of retaliation). To the extent Plaintiff argues that CCR confinement at Elayn Hunt Correctional Facility is less restrictive *see, e.g*, R. Doc. 57, p. 2 ("CCR at Hunt is not held in solitary confinement."), that would not be relevant to the allegation that Whitaker retaliated by transferring Plaintiff from Hawk CCR to Death Row CCR (both of which are at Angola).

[102] To the extent Plaintiff complains of his continued confinement in death row CCR, he has not established that Whitaker is responsible for his continued confinement.

[103] R. Doc. 47.

motion."[104] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[105]

Having reviewed Plaintiff's discovery requests, the information requested would not affect the outcome of Defendant's Motion for Summary Judgment. The information Plaintiff seeks relates largely to the second part of the due process inquiry, but because a liberty interest is not clearly established in Plaintiff's case, it is not necessary to reach the second part of the inquiry regarding whether the procedures associated with the deprivation are sufficient. Other requests seek information that may be relevant to a "class of one" equal protection claim, which fails as a matter of law. Accordingly, Plaintiff's Motion to Compel Discovery will be denied without prejudice to reurging if the Report and Recommendation is not adopted as to Defendants' Motion for Summary Judgment.

## RECOMMENDATIONS AND ORDER

**IT IS RECOMMENDED** that Plaintiff's claims for violations of equal protection, as well as his claims against Antonio Whitaker for retaliation be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(e) and 1915A and that the Motion to Dismiss,[106] filed by Antonio Whitaker be **DENIED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that the Motion for Summary Judgment,[107] filed by Plaintiff Renil Escobarrivera, be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Motion for Summary Judgment,[108] filed by Tim Delaney, Joseph LaMartinaire, and Darrell Vannoy be **GRANTED**, and that Plaintiff's

---

[104] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *C.B. Trucking, Inc. v. Waste Mgmt., Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)).
[105] *Id.* (quoting *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999)).
[106] R. Doc. 40.
[107] R. Doc. 51.
[108] R. Doc. 52.

claims against Tim Delaney, Joseph LaMartinaire, and Darrell Vannoy be **DISMISSED WITH PREJUDICE**, and this this case be **CLOSED**.

**ORDER**

**IT IS ORDERED** that Plaintiff's Motion to Compel Discovery[109] is **DENIED** without prejudice to refiling in the event this Report and Recommendation is not adopted as to Defendants' Motion for Summary Judgment.

Signed in Baton Rouge, Louisiana, on February 24, 2021.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

[109] R. Doc. 47.